**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DAVID FLINN, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>C PEPPER LOGISTICS LLC, and LANTER DELIVERY SYSTEMS, LLC,<br><br>    Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT** |

David Flinn ("Flinn"), individually and on behalf of a Class of similarly situated persons (defined below), alleges the following against Defendant C Pepper Logistics LLC ("C Pepper") and Lanter Delivery Systems, LLC ("Lanter"), based upon personal knowledge, investigation of counsel, and review of relevant documents.

**Parties**

1. Plaintiff David Flinn ("Flinn") is a Kansas resident.

2. Defendant C Pepper Logistics LLC ("C Pepper") is a Missouri limited liability company.

3. C Pepper's headquarters is located at 1600 Wayne Lanter Ave., Madison, Illinois 62060.

4. C Pepper is registered to do business in Kansas and does in fact do business in Kansas.

5. C Pepper's Resident Agent in Kansas is InCorp Services, Inc., and its Registered Office in Kansas is 534 S. Kansas Ave., Suite 1000, Topeka, Kansas 66603.

6. Defendant Lanter Delivery Systems, LLC ("Lanter") is a Delaware limited liability company.

7. Lanter's headquarters is located at 1600 Wayne Lanter Ave., Madison, Illinois 62060.

8. Lanter is registered to do business in Kansas and does in fact do business in Kansas.

9. Lanter's Resident Agent in Kansas is The Corporation Company, Inc., and its Registered Office in Kansas is 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

## Jurisdiction and Venue

10. Flinn is an individual who resides in Johnson County, Kansas.

11. This Court has personal jurisdiction over Defendants and original jurisdiction over Flinn's claims.

12. This Court has subject-matter jurisdiction over Flinn's claims under federal statute, because these claims arise under federal law.

13. This Court has subject-matter jurisdiction over Flinn's common law and state law claims pursuant to 28 U.S.C. § 1367, because all claims alleged form part of the same case or controversy.

14. This Court has personal jurisdiction over Defendants because they regularly conduct business in Kansas and Flinn and other drivers performed services for them in Kansas.

15. Venue is proper in this District under 28 U.S.C. § 1391.

**General Allegations**

*C Pepper and Lanter*

16. Lanter provides overnight unattended delivery service of time-sensitive parts for major auto, agriculture, and heavy-duty truck original equipment manufacturers (OEMs) and industrial supply and equipment distributors.

17. C Pepper is a DOT-registered motor carrier that provides trucking and transfer services.

18. Upon information and belief, Lanter and C Pepper are joint employers, constitute an integrated enterprise, have interrelated operations, and/or otherwise have an association or relationship, and/or Lanter was unjustly enriched to the detriment of drivers, such that Lanter shares responsibility and liability with respect to some or all of the claims in this case.

19. Lanter and C Pepper have the same corporate headquarters at 1600 Wayne Lanter Ave., Madison, Illinois 62060.

20. C Pepper hires individuals to drive established delivery routes out of Lanter distribution centers in numerous states, including at least the following: Kansas; Georgia; Louisiana; North Dakota; and Tennessee.

21. Flinn and other delivery drivers reported to work at and drove trucks out of Lanter distribution centers.

22. Flinn and other delivery drivers were issued Lanter fuel cards to pay for fuel. Fuel costs were later charged back to drivers as itemized deductions on the paystubs issued to them.

23. Lanter states that it does not utilize subcontractors to complete its deliveries.

*C Pepper Fraudulently Misclassifies Drivers as Independent Contractors*

24. On April 4, 2019, Flinn began working as a truck driver for C Pepper[1] in Kansas.

25. Flinn and other drivers hired by C Pepper in Kansas and throughout the United States clearly were and are employees under the law, but C Pepper willfully misclassifies them as independent contractors.

26. By misclassifying its drivers as independent contractors, C Pepper unlawfully shifts the burden of paying the employer's share of payroll taxes from itself to its drivers, and violates numerous other legal obligations it owes to its drivers based on their status as employees.

27. The services provided by Flinn and other drivers are an integral part of C Pepper's business.

28. Drivers' services are heavily integrated with C Pepper's business operations and significantly affect its business success.

29. C Pepper retains and exercises control and direction over the manner in which drivers perform their work.

30. C Pepper dictates the hours and days of work.

31. C Pepper dictates when, where, and how drivers complete their work.

32. C Pepper provides training to the drivers after it hires them.

33. C Pepper provides the trucks, equipment, and tools that drivers use to perform their work.

---

[1] References to C Pepper as the employer or master engaging in certain actions are based on the fact that C Pepper was the nominal master identified on documents issued to Flinn and other drivers, and are made without prejudice to Plaintiff's allegations that Lanter shares liability in this matter based on various legal theories, which will be borne out during discovery.

34. Drivers do not invest in their own work facilities with respect to their work for C Pepper.

35. Drivers have no opportunity for profit or loss with respect to their work for C Pepper.

36. C Pepper pays its drivers a fixed daily wage. C Pepper unilaterally imposes, at its whim, alleged "costs" for vehicle rental, fuel, and insurance, which it adds to, and then simultaneously "deducts" from, drivers' paystubs to "net" the fixed daily wage.

37. Drivers had continuous relationships with C Pepper.

38. Drivers do not incur a significant investment to work for C Pepper because C Pepper provides all necessary equipment and tools.

39. C Pepper treated its drivers as alleged above throughout the limitations period and through the present.

### *C Pepper Willfully Issues Fraudulent Paystubs to Flinn and Other Drivers*

40. The parties agreed that Flinn would be paid $210 per day for his work.

41. Flinn understood that he would receive a weekly paycheck, and C Pepper would provide him with a truck and pay for fuel, insurance, and all other expenses associated with the work.

42. Flinn generally worked five days per week, so he expected to be compensated at the rate of $1050 per week, with occasional increases for specials and weeks he worked six days.

43. For example, Flinn earned $25 in specials in his first full week of work, so he expected his weekly paystub would show $1075 in pay.

44. Instead, Flinn's first paystub showed $2159.90 of gross pay with the following "deductions": (1) $89.90 for insurance; (2) $370 for vehicle rental; and (3) $650 for fuel.

45. With those "deductions," Flinn's pay came out to $1075.00.

46. According to his paystub, Flinn was actually paid $431.98 per day, but the deductions brought the total down to $210 per day.

47. C Pepper charged Flinn the same daily fuel "deductions" regardless of how many miles he drove, how many gallons of fuel he used, or the actual cost of the fuel (per gallon or total).

48. The fraudulent nature of the "deductions" depicted on his paystubs became especially apparent during the period Flinn trained a new driver. Even though Flinn and the trainee were both riding in the same truck together and using the same fuel during the training period, C Pepper deducted the same usual daily deductions for vehicle rental, fuel, and insurance from *both of their paychecks* for that period.

49. C Pepper also improperly deducted other costs, such as "training" and "damage" costs, from Flinn's pay.

50. C Pepper treated the other drivers the same way, i.e., it willfully issued paystubs with fraudulent and inaccurate information about their wages and so-called "deductions" from their wages, and it made unlawful deductions from their pay.

*Flinn Calls Out C Pepper's Fraudulent Reporting*

51. Flinn recognized that C Pepper was improperly treating him and other drivers as independent contractors, not employees.

52. Flinn recognized that the inaccurate and fraudulent paystubs C Pepper issued to him and other drivers could create tax problems for them.

53. Flinn talked to his tax preparer and legal counsel about these issues.

54. After talking to his tax preparer and legal counsel, Flinn met with his manager, Randi Wood, and made a complaint that (1) he was really an employee but was misclassified as an independent contractor, and (2) the expenses added to and "deducted" from his wages on his paystubs were factually inaccurate and fraudulent, which could create tax problems for him.

55. Wood asked Flinn if he was planning to sue C Pepper.

56. Shortly after this conversation, C Pepper terminated Flinn's employment.

*C Pepper Willfully Files and Issues Fraudulent Tax Documents*

57. In 2020, many months after Flinn lodged his complaints, C Pepper filed and issued an IRS Form 1099-MISC ("1099") to Flinn for the 2019 calendar year.

58. By filing and issuing the 1099, C Pepper willfully misrepresented that Flinn was an independent contractor rather than an employee.

59. In the 1099, C Pepper reported $24,404.90 in "nonemployee compensation" (Box 7) paid to Flinn in 2019.

60. The nonemployee compensation reported in Box 7 on the 1099 included the grossed-up expenses that were added to, and then "deducted" from, Flinn's paystubs.

61. Thus, the fraudulent 1099 filed by C Pepper reported more than twice as much compensation paid to Flinn than C Pepper had actually paid to him.

62. Upon information and belief, C Pepper has been engaging in this same unlawful scheme with respect to its drivers for years.

63. Upon information and belief, C Pepper falsely inflates nonemployee compensation paid to all of its drivers in willfully filed and issued fraudulent 1099s for the purpose of increasing the amount it claims as business expenses, so it can underpay its own taxes.

64. By willfully filing and issuing fraudulent 1099s to its drivers, C Pepper puts the drivers between a rock and a hard place – they are forced to choose between: (1) paying taxes on more than twice as much nonemployee income than they actually received, or (2) claiming business deductions for expenses they know to be false.

65. In addition, by willfully misclassifying its drivers as independent contractors and filing and issuing fraudulent 1099s to its drivers, C Pepper unlawfully shifts the burden of paying the employer's share of payroll taxes from itself to its drivers.

66. Other C Pepper drivers recognize that the company's misclassification and payroll scheme is unlawful. On a popular hiring website, a former C Pepper driver in Lafayette, Louisiana left the following review:

> Forced to sign a blank independent contractors contract. Manager lies about everything. Forced to sort company's customer's freight for free. Charges you for $650 per week for fuel whether you use that much or not. Forces you to use the trucks they lease and charge double the normal lease fee. Basically cheat you out of most of your money.

*C Pepper Logistics Employee Reviews*, INDEED, https://www.indeed.com/cmp/C-Pepper-Logistics/reviews (last visited March 12, 2020).

67. Similarly, a former C Pepper driver in Johnson City, Tennessee left the following review:

> They 1099 you but treat you as an employee and expect you to devote all your time to them and not pay u any extra stay away from this company at all cost.

*C Pepper Logistics Employee Reviews*, INDEED, https://www.indeed.com/cmp/C-Pepper-Logistics/reviews (last visited March 12, 2020).

**Class Allegations**

68. Flinn incorporates and realleges all other allegations in the Complaint as if fully set forth herein.

69. Flinn brings this action on behalf of himself and those similarly situated across the United States.

70. In accordance with Federal Rule of Civil Procedure 23, Flinn brings this case as a class action on behalf of a Class consisting of:

> All individuals who performed services as a driver for C Pepper Logistics LLC and were treated as an independent contractor at any time on or after January 1, 2014 (including new drivers who are hired after this Complaint is filed).

71. Class certification is appropriate under Fed. R. Civ. P. 23(a), (b)(1), (2), and/or (3), and (c)(4).

72. The class satisfies the numerosity requirement because it is composed of hundreds, if not thousands, of persons in numerous locations. The number of class members is so large that joinder of all its members is impracticable.

73. There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to: whether C Pepper misclassified Class Members as independent contractors; whether C Pepper was unjustly enriched through its misclassification of Class Members; whether C Pepper willfully filed fraudulent 1099-MISC forms with respect to Class Members; whether C Pepper interfered with Class Members' ability to participate in the company's employee benefit plans; and whether Class Members are entitled to damages.

74. Flinn's claims are typical of the claims of the Class Members because Flinn's claims, and the claims of all Class Members, arise out of the same conduct, policies, and practices of C Pepper as alleged herein, and all Class Members are similarly affected by C Pepper's wrongful conduct.

75. Flinn will fairly and adequately represent the Class and has retained counsel competent in the prosecution of class action litigation. Flinn has no interests antagonistic to those of other members of the Class. Flinn is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

76. Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

77. In the alternative, certification under Rule 23(b)(2) is warranted because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Likewise, particular issues, including those listed in paragraph 63, are appropriate for certification under Rule 23(c)(4), because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interest therein.

78. In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

## Causes of Action and Claims for Relief

### Count I – Fraudulent Filing of Information Returns, in Violation of 26 U.S.C. § 7434

79. Flinn incorporates and realleges all other allegations in the Complaint as if fully set forth herein.

80. Flinn brings this claim on behalf of himself and Class Members.

81. C Pepper issued 1099s, rather than W-2s, to Class Members, despite the fact that Class Members were employees of C Pepper.

82. C Pepper substantially overreported the amount of compensation paid to Class Members in the 1099s.

83. Upon information and belief, C Pepper willfully issued fraudulent 1099s to Class Members throughout the limitations period.

84. At the time it issued the 1099s, C Pepper knew that Class Members were employees, not independent contractors.

85. At the time it issued the 1099s, C Pepper knew that it actually paid Class Members significantly less than the amounts listed on the 1099s.

86. At the time it issued the 1099s, C Pepper knew that the "deductions" reported on Class Members' paystubs, upon which the compensation amounts reported on their 1099s were based, were false.

87. Despite knowledge that the 1099s contained fraudulent information, C Pepper willfully filed and issued them.

88. Because C Pepper willfully filed fraudulent information returns with respect to payments purported to be made to Class Members, Flinn, on behalf of himself and other Class Members, is entitled to bring a civil action for damages against C Pepper pursuant to 26 U.S.C. § 7434.

### Count II – Unjust Enrichment

89. Flinn incorporates and realleges all other allegations in the Complaint as if fully set forth herein.

90. Flinn brings this claim on behalf of himself and the Class.

91. Under applicable federal tax law, employers and employees share equally in the burden of paying payroll taxes, such as Social Security and Medicare. However, self-employed individuals must pay both the employer and employee share of these payroll taxes.

92. By misclassifying Flinn and other Class Members as independent contractors, C Pepper received the benefit of reduced tax liability by improperly shifting the burden of paying the employer's share of these payroll taxes from itself to Class Members.

93. C Pepper is aware that it is receiving the benefit of reduced tax liability.

94. C Pepper's acceptance of its reduced tax liability is inequitable.

95. C Pepper has not repaid Flinn and the Class for the benefit of its reduced tax liability.

96. C Pepper has been unjustly enriched by the retention of the reduced tax liability.

### Count III – Violation of State Common Law and Wage Laws

97. Flinn incorporates and realleges all other allegations in the Complaint as if fully set forth herein.

98. Flinn brings this claim on behalf of himself and the Class.

99. Under applicable state statutes and common law, employers are precluded from making improper deductions from employees' wages.

100. C Pepper made improper and unlawful deductions from Flinn's and other Class Members' wages, in violation of various state wage payment laws and common law.

### Prayer for Relief

101. Flinn, individually and on behalf of Class Members, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

   a. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Flinn is a proper class representative; and appoint Flinn's Counsel as Class Counsel;

   b. That Flinn and the Class be granted the declaratory relief sought herein;

   c. That the Court award Flinn and Class Members all statutory and common law damages, including but not limited to economic loss, compensatory, consequential, and/or general damages in an amount to be determined at trial;

   d. That the Court award statutory damages, trebled, punitive, and/or exemplary damages, to the extent permitted by law;

   e. That the Court award all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution;

   f. That Lanter be held jointly and severally liable for some or all of the claims in this case, as will be borne out during discovery;

   g. That the Court grant permanent injunctive relief to prohibit C Pepper from continuing to engage in the unlawful acts, omissions, and practices described herein;

   h. That the Court award to Flinn and Class Members all costs and expenses of the action, including attorneys' fees;

   i. That the Court award pre- and post-judgment interest at the maximum legal rate; and

   j. That the Court grant all such other relief as it deems just and proper.

102. Flinn reserves the right to amend his Complaint and claims, including but not limited to adding additional Defendants, adding additional claims, and/or modifying his legal theories, as may be warranted by further investigation and discovery.

## Designation of Place of Trial

Flinn designates Kansas City, Kansas, as the place of trial.

## Demand for Jury Trial

Flinn demands a jury trial on all claims so triable.

> By: */s/ Boyd A. Byers*
> Boyd A. Byers, KS #16253
> Jeremy E. Koehler, KS #28217
> Foulston Siefkin LLP
> 1551 N. Waterfront Parkway, Suite 100
> Wichita, Kansas 67206-4466
> Tel.: (316) 291-9796
> Fax: (866) 559-6541
> Email: bbyers@foulston.com
>     jkoehler@foulston.com
>
> ATTORNEYS FOR PLAINTIFF