# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DAVID FLINN, on behalf of himself and all others similarly situated,

      Plaintiff,

      v.

C PEPPER LOGISTICS LLC and LANTER DELIVERY SYSTEMS, LLC,

      Defendants.

Case No. 2:20-CV-02215-JAR-KGG

## MEMORANDUM AND ORDER

Plaintiff David Flinn brings this putative class action against Defendants C Pepper Logistics LLC and Lanter Delivery Systems, LLC as joint employers, alleging Defendants misclassified their truck driver employees as independent contractors. Before the Court are Defendant Lanter Delivery Systems, LLC's ("Lanter") Motion to Dismiss (Doc. 13), and Plaintiff's Motion for Leave to File Second Amended Class Action Complaint (Doc. 19). The motions are fully briefed and the Court is prepared to rule. As described more fully below, the Court grants in part and denies in part Flinn's motion to amend by allowing him to amend Count II. The motion to amend Count I is denied as futile. The motion to dismiss the First Amended Complaint is therefore moot.

## I.    Standards

Because granting Flinn's motion for leave to amend would render Lanter's motion to dismiss moot, the Court addresses that motion first. Under Rule 15(a), leave to amend a complaint is freely given when justice so requires.[1] A party is typically granted leave to amend

---

[1] Fed. R. Civ. P. 15(a)(2).

under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[2]

A proposed amendment is futile if the amended complaint would be subject to dismissal under Fed. R. Civ. P. 12(b)(6).[3]  To pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[5]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the court

---

[2] *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

[3] *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8] *Id.*

[9] *Id.* at 679.

must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "While the [Rule] 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."[12]

Count I of the proposed Second Amended Complaint must meet a more exacting pleading standard because it alleges fraud.  Under Fed. R. Civ. P. 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[13]  The rule's purpose is to provide the defendant fair and adequate notice of the claim and to allow the defendant to respond on an informed basis.[14]  A fraud claim requires "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[15]  The rule allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to be averred generally.[16]  "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."[17]

---

[10] *Id.*

[11] *Id.* at 678.

[12] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[13] Fed. R. Civ. P. 9(b).

[14] *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

[15] *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

[16] Fed. R. Civ. P. 9(b); *see Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

[17] *Scheidt*, 956 F.2d at 967; *see also Koch*, 203 F.3d at 1236.

## II.     Facts Alleged in Proposed Second Amended Complaint

The following relevant facts are alleged in Flinn's proposed Second Amended Complaint and are accepted as true for purposes of deciding these motions.

Lanter provides overnight unattended delivery service of time-sensitive parts for major auto, agriculture, and heavy-duty truck original equipment manufacturers ("OEMs") and industrial supply and equipment distributors.  C Pepper Logistics LLC ("C Pepper") is a U.S. Department of Transportation-registered motor carrier that provides trucking and transfer services.  Lanter created a business model in which it props up and controls what it calls "dedicated carrier partners," including C Pepper.  Lanter exercised direction and control over almost every aspect of C Pepper's business operations, including but not limited to, the structure of its business model, its accounting and payroll functions, and arranging and guaranteeing its truck leases.  As a part of Lanter's direction and control over C Pepper, Lanter assigned a financial analyst to direct and oversee C Pepper's business, accounting, and financial processes.

James court of appealsPepper used to be a direct employee of Lanter.  However, Lanter came up with
a scheme to prop him up as a strawman, through a limited liability company that he owned (C Pepper), but whose business, payroll, accounting, and financial operations Lanter effectively directed and controlled, to employ truck drivers for Lanter's business.  Acting in the interest of C Pepper, in association and conspiracy with Lanter, and under Lanter's direction and control, James Pepper allowed and helped facilitate the unlawful conduct alleged by Plaintiff.

Defendants share the same corporate headquarters at 1600 Wayne Lanter Ave., Madison, Illinois 62060.  Defendants hire individuals to drive established delivery routes out of Lanter distribution centers in numerous states, including at least the following: Kansas; Georgia;

4

Louisiana; North Dakota; and Tennessee.  Flinn and other delivery drivers reported to work at and drove trucks out of Lanter distribution centers.  Flinn and other delivery drivers were issued Lanter fuel cards to pay for fuel.  Fuel costs were later charged back to drivers as itemized deductions on the paystubs issued to them.

Flinn alleges generally that Defendants Lanter, C Pepper, and James Pepper fraudulently misclassified drivers as independent contractors, willfully issued fraudulent paystubs to Flinn and other delivery drivers, and willfully filed and issued fraudulent tax documents showing that Flinn and other delivery drivers were independent contractors, rather than employees.  Plaintiff alleges two counts for relief against all Defendants: (1) fraudulent filing of information returns, in violation of 26 U.S.C. § 7434; and (2) violation of state wage laws.

## III.   Discussion

Lanter moves to dismiss the First Amended Complaint on the basis that Flinn's tax claim fails to plead fraud with particularity because it alleges that C Pepper, and not Lanter, issued the 1099 forms that allegedly overreported Flinn's compensation.  Lanter further argues that the wage claim fails because Flinn fails to sufficiently allege an employment relationship with Lanter.  Flinn seeks to amend to add James Pepper as a defendant, to add facts to support his assertion that Lanter is a joint employer with C Pepper and James Pepper, and to clarify his wage claims.  The Court first considers Lanter's argument that leave to amend should denied on the basis of undue delay and prejudice.  Then, the Court considers whether the proposed Second Amended Complaint is futile.

### A.   Undue Delay and Prejudice

Lanter first opposes the motion for leave to amend based on undue delay and prejudice because Flinn's counsel did not alert its counsel to potential amendments before Lanter filed its

5

motion to dismiss, and instead waited until the motion to dismiss was fully briefed before moving for leave to amend without adequate explanation for the delay.  The Court declines to deny leave to amend on the basis of undue delay under the circumstances of this case.  To be sure, it would have been more efficient for Flinn's motion for leave to amend to accompany his opposition to the motion to dismiss—his decision to wait until one month after the motion to dismiss went under advisement certainly delayed this Court's ability to rule quickly. Nonetheless, there has been no scheduling order in the case yet and, thus, no deadline set for amendments.  And nothing in the federal rules prohibits a party from moving for leave to amend after a dispositive motion is briefed.  Flinn did not file the motion for leave out of time, and given the liberal amendment standard in Rule 15, this Court is not inclined to deny leave to amend on based on delay under the circumstances.

### B. Futility

#### 1. Count I: Fraudulent Filing of Information Returns in Violation of 26 U.S.C. § 7434

Flinn alleges in the proposed Second Amended Complaint that all Defendants violated 26 U.S.C. § 7434 by issuing 1099 forms to Flinn and the class members that overreported the amount of compensation paid to them with knowledge that Flinn and the class members were employees, rather than independent contractors.  The statute provides: "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."[18]  The elements of this cause of action are: "(1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the

---

[18] 26 U.S.C. § 7434.

6

fraudulent information return."[19]

Lanter moves to dismiss under the first element, arguing that the First Amended Complaint fails as to Lanter because it alleges only that C Pepper issued the 1099. In the proposed Second Amended Complaint, Flinn alleges that all Defendants issued the 1099s and substantially overreported the amount of compensation paid to Flinn and other class members. Lanter argues that the Second Amended Complaint is futile because only "filers" can be liable under 26 U.S.C. § 7434, and there are no facts alleged that Lanter was a filer. Lanter urges the Court to reject for lack of particularity under both *Iqbal* and Rule 9 Flinn's allegation that all Defendants issued the filing. Flinn responds that the Second Amended Complaint alleges sufficient facts that Defendants are his joint employer, and points to caselaw that interprets the statute as allowing liability against multiple participants in a tax fraud scheme.

Although Lanter couches its futility challenge as a failure to plead fraud with particularity, the basis for its challenge is that only a filer can be liable under § 7434. Neither party addressed the statutory analysis required to resolve this issue in the briefs, yet the Court must construe the statute to determine whether a party other than a filer can be liable. "Courts determine Congress's intent by employing the traditional tools of statutory interpretation, beginning—as always—with an examination of the statute's text,"[20] reading "the words of the statute in their context and with a view to their place in the overall statutory scheme."[21] The tools of statutory construction "include examination of the statute's text, structure, purpose,

---

[19] *Czerw v. Lafayette Storage & Moving Corp.*, No. 16-CV-6701-FPG, 2018 WL 5859525, at *2 (W.D.N.Y. Nov. 9, 2018).

[20] *Sinclair Wyo. Ref. Co. v. U.S. Env't Prot. Agency*, 887 F.3d 986, 990 (10th Cir. 2017).

[21] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1161 (10th Cir. 2011) (quoting *Wright v. Fed. Bureau of Prisons*, 451 F.3d 1231, 1234 (10th Cir. 2006)).

history and relationship to other statutes."[22]  The plain meaning of a statute should control unless it "will produce a result demonstrably at odds with the intentions of its drafters."[23]  If the words in the statute are clear, the Court's analysis ends and the plain meaning controls.[24]

If, instead, the Court finds that the words in the statute are ambiguous, the Court can look beyond the terms of the statute to determine legislative intent.[25]  "A statute is ambiguous if 'it is capable of being understood by reasonably well-informed persons in two or more different senses.'"[26]  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."[27]  "Courts have a 'duty to construe statutes, not isolated provisions,'"[28] because "[s]tatutory language has meaning only in context."[29]

In *Czerw v. Lafayette Storage & Moving Corp.*,[30] the Western District of New York considered whether § 7434 liability is limited to the person who filed the information return.[31]  After surveying statutory interpretation by district courts from around the country, the court identified a split of authority.  Some courts limit liability to the person required to file the

---

[22] *Harbert v. Healthcare Servs. Grp., Inc.*, 391 F.3d 1140, 1147 (10th Cir. 2004).

[23] *Rajala v. Gardner*, 709 F.3d 1031, 1038 (10th Cir. 2013) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).

[24] *Thomas*, 631 F.3d at 1161 (quoting *Wright*, 451 F.3d at 1234.)

[25] *Id.*

[26] *Id.* (quoting *United States v. Hinckley*, 550 F.3d 926, 932 (10th Cir. 2008), *abrogated on other grounds by Reynolds v. United States*, 565 U.S. 432 (2012)).

[27] *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1196 (10th Cir. 2017) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

[28] *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) (quoting *Gustafson v. Alloyd Co*., 513 U.S. 561, 568 (1995)).

[29] *Id.* at 289 (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005)).

[30] No. 16-CV-6701-FPG, 2018 WL 5859525, at *3 (W.D.N.Y. Nov. 9, 2018).

[31] *Id.* at *2–4.

8

information,[32] while others have determined that "a person who causes a fraudulent return to be filed, whether on his own behalf or on behalf of another, may be liable under § 7434."[33] The cases applying the statute only to filers rely on the statutory language in § 7434(a) providing for a civil action "against the person so filing such return." The cases applying a broader interpretation look to the language in § 7434(a) that "any person [who] willfully files a fraudulent information return" may be held liable.

The Court is persuaded that Congress, by imposing liability on "any person" who willfully files a fraudulent return, did not intend to limit liability to filers, as Lanter contends. There is no regulation interpreting § 7434. The word "filer" is not used in the statute, yet the courts limiting its application to filers rely on the Internal Revenue Service's ("IRS") definition of "filer" in 26 C.F.R. § 301.6721-1(g)(6), a person "required to file an information return."[34] But that regulation construes a different section of the tax code—26 U.S.C. § 6721—and its definition of "filer" is expressly limited to that regulation.

> Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.[35]

Here, the same words are not used in different parts of the tax code and the Court declines to

---

[32] *Id.* at *2 (first citing *Vandenheede v. Vecchio*, No. 12-12284, 2013 WL 692876, *2–3 (E.D. Mich. Feb. 26, 2013), *aff'd on other grounds*, 541 F. App'x 577 (6th Cir. 2013); then citing *Swartwout v. Edgewater Grill LLC*, No. 1:12-cv-130, 2013 WL 3655162 (W.D. Mich. July 12, 2013); and then citing *Swallow v. Torngren*, No. 17-cv-5261, 2018 WL 2197614, at *13 (N.D. Cal. May 14, 2018)).

[33] *Id.* (first citing *Angelopoulos v. Keystone Orthopedic Specialists, S.C., Wachn, LLC*, No. 12-cv-5836, 2015 WL 2375225, at *3-5 (N.D. Ill. May 15, 2015); then citing *Sigurdsson v. Dicarlantonio*, No. 6:12-cv-920, 2013 WL 12121866, at *6-8 (M.D. Fla. Dec. 11, 2013)); *see also Sawyer v. Sacca*, No. 06-E-025, 2007 WL 4462585 (N.H. Apr. 30, 2007).

[34] *See, e.g.*, *Vandenheede*, 2013 WL 692876, at *3. 26 U.S.C. § 6721 "penalizes 'any person' who files a late return, a return lacking the required information, or a return including inaccurate information." *Angelopoulos*, 2015 WL 2375225, at *4

[35] *Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) (citation omitted).

9

import the IRS's definition from 26 C.F.R. § 301.6721-1(g)(6) and apply it to an unrelated part of the code that does not utilize the same language.

Moreover, the Court agrees with the *Czerw*, *Sigurdsson*, and *Angelopoulos* courts' conclusion that limiting liability under § 7434 to "filers" would lead to absurd results because it would not allow for liability unless the filing was required.[36]  Congress passed § 7434 because "[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers."[37]  Restricting liability to required filings would undermine Congress's intent to provide a remedy to taxpayers harmed by the filing of fraudulent information.  Moreover, "it would fail to deter an agent working alongside or on behalf of a principal who (perhaps unbeknownst to the principal) willfully prepares a fraudulent tax return and causes it to be filed."[38]  Instead, culpable agents may be liable under common-law principles of corporate officer liability so that § 7434 "impose[s] liability on any person who willfully causes a fraudulent information return to be filed."[39]  Corporate officer liability thus may apply for torts committed in a representative capacity.[40]

But determining that § 7434 liability can lie beyond the principal filer does not end the inquiry in this case.  The Court must determine if Flinn alleges sufficient facts to demonstrate that Lanter issued the fraudulent information on behalf of C Pepper.  The First Amended Complaint clearly alleges that C Pepper, and not Lanter, filed the 1099s that form the basis of the

---

[36] *Angelopoulos*, 2015 WL 2375225, at *4; *Sigurdsson*, 2013 WL 12121866, at *6-7; *Czerw*, 2018 WL 5859525, at *2.

[37] H.R. Rep. No. 104-506 at 35 (1996); *see Angelopoulos*, 2015 WL 2375225, at *4; *Sigurdsson*, 2013 WL 12121866, at *6-7; *Czerw*, 2018 WL 5859525, at *2.

[38] *Angelopoulos*, 2015 WL 2375225, at *5.

[39] *Czerw*, 2018 WL 5859525, at *2.

[40] *Sigurdsson*, 2013 WL 12121866, at *7 (collecting cases imposing corporate officer liability for violations of other federal statutes).

tax claim. Flinn does not allege corporate officer liability, but instead contends that because the proposed Second Amended Complaint alleges facts in support of a joint employment relationship, Lanter can be held liable.

Assuming that Lanter and C Pepper are a joint or single employer, it does not necessarily follow that Lanter violated the statute by willfully causing the 1099s to be filed on C Pepper's behalf. "When fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant."[41] The First Amended Complaint clearly alleges that C Pepper "filed and issued an IRS Form 1099-MISC ("1099") to Flinn for the 2019 calendar year," that willfully misreported his compensation in order to underpay its own taxes.[42] That pleading includes allegations of joint employment with Lanter, and in a footnote indicates that "C Pepper was the nominal master identified on documents issued to Flinn and other drivers," but reserves the right to allege that Lanter shares liability after conducting additional discovery. The proposed Second Amended Complaint changes these allegations to generically ascribe the same conduct to "Defendants," but makes no specific allegations about Lanter's and C Pepper's conduct with regard to filing the 1099 forms. For example, Flinn alleges now that "*Defendants* issued 1099s, rather than W-2s, to Class Members, despite the fact that Class Members were employees of Defendants."[43]

As discussed above, the statute requires that the defendant at least willfully cause a fraudulent information return to be filed, and Rule 9 requires that fraud be pled with particularity. Yet, there are no factual allegations in support of Defendants' respective roles in issuing the 1099s. In all of the cases that extend § 7434 liability to corporate officers, there were

---

[41] *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 933 (D. Kan. 2007) (citing *Odyssey re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)).

[42] Doc. 12 ¶¶ 57–67, 81–88.

[43] Doc. 19-1 ¶ 89 (emphasis added).

11

facts alleged that an agent took part in preparing or submitting the filing information on behalf of the principal.[44] There are no such facts alleged here, either in the First Amended Complaint or the proposed Second Amended Complaint. Accordingly, Flinn's motion for leave to amend Count I to generically attribute filing conduct to Defendants as a whole is denied as futile.

### 2.  Wage Claim

Proposed Count II asserts a claim that "Defendants made improper and unlawful deductions from Flinn's and other Class Members' wages, in violation of various state wage payment laws and common law."[45] Lanter argues that both pleadings lump together all Defendants and fail to explain the conduct attributable to each one. Moreover, Lanter argues that both pleadings are devoid of factual allegations that support joint employment. Flinn responds that the allegations in the proposed Second Amended Complaint demonstrate a level of control over C Pepper by Lanter that allows for a reasonable inference that they are joint employers or an integrated enterprise and, thus, jointly liable under the theories alleged therein.

Flinn does not identify the relevant state law for his wage claim in the proposed Second Amended Complaint. In his response to Lanter's motion to dismiss, he cites the Kansas Wage Payment Act ("KWPA") and the Illinois Wage Payment Act ("IWPA"). Both statutes require an employment relationship in order to apply.[46]

A twenty-factor test applies to determine whether an employer/employee relationship exists under the KWPA, a test that "includes economic reality considerations, while maintaining the primary focus on an employer's right to control."[47] Those twenty factors are:

---

[44] *Czerw*, 2018 WL 5859525, at *2; *Sigurdsson*, 2013 WL 12121866, at *7; *Angelopoulos*, 2015 WL 2375225, at *5.

[45] Doc. 19-1 ¶ 100.

[46] K.S.A. § 44-313(b); K.A.R. 49-20-1(e); 820 Ill. Comp. Stat. 115/9.

[47] *Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 76 (Kan. 2014).

(1) the employer's right to require compliance with instructions (economic reality test's degree of control factor);

(2) the extent of any training provided by the employer;

(3) the degree of integration of the worker's services into the business of the employer (economic reality test's integral part of employer's business factor);

(4) the requirement that the services be provided personally by the worker;

(5) the extent to which the worker hires, supervises, and pays assistants;

(6) the existence of a continuing relationship between the worker and the employer (economic reality test's permanence of the working relationship factor);

(7) the employer's establishment of set work hours;

(8) the requirement that the worker devote full-time to the employer's business;

(9) the degree to which the work is performed on the employer's premises;

(10) the degree to which the employer sets the order and sequence of work;

(11) the requirement that the worker submit regular or written reports to the employer;

(12) the manner of payment to the worker, e.g., by the hour, day, or job;

(13) the extent to which the employer pays the worker's business or travel expenses;

(14) the degree to which the employer furnishes tools, equipment, and material (economic reality test's investment in business factor);

(15) the incurrence of significant investment by the worker (economic reality test's investment in business factor);

13

>(16) the ability of the worker to make a profit or suffer a loss (economic reality test's opportunity for profit or loss factor);
>
>(17) whether the worker can work for more than one firm at a time;
>
>(18) whether the worker makes his or her services available to the general public on a regular and consistent basis;
>
>(19) whether the employer has the right to discharge the worker; and
>
>(20) whether the worker has the right to terminate the relationship at any time without incurring liability.[48]

Under the IWPA, the test for joint employment is whether "two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment."[49] The relevant factors under this test are: "the putative joint employer's role in 'hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job.'"[50]

Plaintiff contends that he alleges specific facts supporting an "extreme level of control" by Lanter over C Pepper sufficient to establish an employment relationship with Lanter under the above-stated tests. Specifically, Flinn alleges that that Lanter and C Pepper share the same corporate headquarters, drivers are hired to drive established delivery routes out of Lanter distribution centers, drivers report to work and drive trucks out of Lanter distribution centers, and drivers were issued Lanter fuel cards to pay for fuel that is later charged back as itemized deductions on their paystubs. He also alleges that Lanter directed and controlled C Pepper's

---

[48] *Id.*

[49] *Andrews v. Kowa Printing Corp.*, 383 N.E.2d 894, 904 (Ill. 2005) (quoting *Vill. of Winfield v. Ill. State Lab. Rels. Bd.*, 678 N.E.2d 1041, 1044 (Ill. 1997)).

[50] *Id.* (quoting *Vill. of Winfield*, 678 N.E.2d at 1044).

14

accounting and payroll functions and arranged and guaranteed its truck leases.  He alleges that Lanter assigned a financial analyst to direct and oversee C Pepper's business, accounting, and financial processes.

Although the facts in the proposed Second Amended Complaint fail to touch on some of the factors used under Kansas and Illinois law, Flinn alleges enough facts under either body of law to plausibly support an employment relationship.  As to Illinois law, Flinn alleges facts suggesting that Lanter plays a role in setting drivers' wages, work hours, and other terms and conditions of employment, and that Lanter plays a role in the day-to-day supervision and control of delivery drivers such as Flinn.  Moreover, the facts alleged in the Second Amended Complaint implicate the following factors under Kansas law: the degree of integration of the worker's services into the business of the employer; the existence of a continuing relationship between the worker and the employer; the degree to which the work is performed on the employer's premises; the degree to which the employer sets the order and sequence of work; the extent to which the employer pays the worker's business or travel expenses; the degree to which the employer furnishes tools, equipment, and material; the incurrence of significant investment by the worker; and the ability of the worker to make a profit or suffer a loss.  Given these allegations, the Court finds that Flinn has alleged sufficient facts to support an employment relationship with Lanter under the KWPA and IWPA.  Thus, Plaintiff is granted leave to amend as to Count II.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to File Second Amended Class Action Complaint (Doc. 19) is **granted in part and denied in part**.  Plaintiff's motion for leave to amend is granted as to Count II; it is denied as to Count I.

Plaintiff shall file a Second Amended Complaint that complies with the Court's ruling by **January 20, 2021**.

**IT IS FURTHER ORDERED BY THE COURT** that Lanter's Motion to Dismiss (Doc. 13) the First Amended Complaint is denied as **moot**.

**IT IS SO ORDERED.**

Dated: January 8, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
