UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID FLINN, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>C PEPPER LOGISTICS LLC, and LANTER DELIVERY SYSTEMS, LLC, and JAMES PEPPER,<br><br>      Defendants. | Case No. 2:20-cv-02215-JAR-KGG |

**DEFENDANT LANTER DELIVERY SYSTEMS, LLC'S
ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant, Lanter Delivery Systems, LLC , under Rules 8, 12, and 15 of the Federal Rules of Civil Procedure, denies every allegation contained in the Second Amended Complaint (Complaint) except those specifically admitted as being true below.

**I.
ANSWER**

**Parties**

1.      Plaintiff David Flinn ("Flinn") is a Kansas resident.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and therefore denies them.**

2.      Defendant C Pepper Logistics LLC ("C Pepper") is a Missouri limited liability company.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and therefore denies them.**

3.      C Pepper's headquarters is located at 1600 Wayne Lanter Ave., Madison, Illinois 62060.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 3 of the Complaint and therefore denies them.**

4.      C Pepper is registered to do business in Kansas and does in fact do business in Kansas.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and therefore denies them.**

5.      C Pepper's Resident Agent in Kansas is InCorp Services, Inc., and its Registered Office in Kansas is 534 S. Kansas Ave., Suite 1000, Topeka, Kansas 66603.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and therefore denies them.**

6.      Defendant Lanter Delivery Systems, LLC ("Lanter") is a Delaware limited liability company.

**Answer:  Defendant admits the allegations in paragraph 6 of the Complaint.**

7.      Lanter's headquarters is located at 1600 Wayne Lanter Ave., Madison, Illinois 62060.

**Answer:  Defendant denies the allegations in paragraph 7 of the Complaint.**

8.      Lanter is registered to do business in Kansas and does in fact do business in Kansas.

**Answer:  Defendant admits the allegations in paragraph 8 of the Complaint.**

9.      Lanter's Resident Agent in Kansas is The Corporation Company, Inc., and its Registered Office in Kansas is 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

**Answer:  Defendant admits the allegations in paragraph 9 of the Complaint.**

10.     James Pepper is an owner and officer of C Pepper.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 10 of the Complaint and therefore denies them.**

11.     James Pepper is a resident of Monroe County, Illinois and may be personally served with Summons at his residence, which is located at 3420 Hanover Road in Columbia, Illinois 62236.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 11 of the Complaint and therefore denies them.**

## Jurisdiction and Venue

12.     Flinn is an individual who resides in Johnson County, Kansas.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 12 of the Complaint and therefore denies them.**

13.     This Court has personal jurisdiction over Defendants and original jurisdiction over Flinn's claims.

**Answer:  The allegations in paragraph 13 are legal conclusions to which no response is required. To the extent a response is required, Defendant admits the Court has personal jurisdiction over Plaintiff's individual claim asserted in Count II of the Complaint and subject matter jurisdiction over Plaintiff's claims. Defendant otherwise denies the allegations in paragraph 13 of the Complaint.**

14.     This Court has subject-matter jurisdiction over Flinn's claims under federal statute, because these claims arise under federal law.

**Answer:  The allegations in paragraph 14 are legal conclusions to which no response is required. To the extent a response is required, Defendant admits the Court has subject matter jurisdiction. Defendant otherwise denies the allegations in paragraph 14 of the Complaint.**

15.    This Court has subject-matter jurisdiction over Flinn's common law and state law claims pursuant to 28 U.S.C. § 1367, because all claims alleged form part of the same case or controversy.

**Answer:  The allegations in paragraph 15 are legal conclusions to which no response is required. To the extent a response is required, Defendant admits the Court has subject matter jurisdiction. Defendant otherwise denies the allegations in paragraph 15 of the Complaint.**

16.    This Court has personal jurisdiction over Defendants because they regularly conduct business in Kansas and Flinn and other drivers performed services for them in Kansas.

**Answer:  Defendant denies the allegations in paragraph 16 of the Complaint.**

17.    Venue is proper in this District under 28 U.S.C. § 1391.

**Answer:  The allegations in paragraph 17 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Defendant admits venue is proper in this District.**

## General Allegations

*C Pepper and Lanter*

18.     Lanter provides overnight unattended delivery service of time-sensitive parts for major auto, agriculture, and heavy-duty truck original equipment manufacturers (OEMs) and industrial supply and equipment distributors.

**Answer:  Defendant admits it is a federally authorized property broker and freight forwarder that arranges for overnight unattended delivery service of time-sensitive parts for major auto, agriculture, and heavy-duty truck original equipment manufacturers (OEMs) and industrial supply and equipment distributors. Defendant otherwise denies the allegations in paragraph 18 of the Complaint.**

19.     C Pepper is a DOT-registered motor carrier that provides trucking and transfer services.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and therefore denies them.**

20.     Lanter created a business model in which it props up and controls what it calls "dedicated carrier partners," including C Pepper.

**Answer:  Defendant denies the allegations in paragraph 20 of the Complaint.**

21.     Lanter exercised direction and control over almost every aspect of C Pepper's business operations, including but not limited to the structure of its business model, its accounting and payroll functions, and arranging and guaranteeing its truck leases.

**Answer:  Defendant denies the allegations in paragraph 21 of the Complaint.**

22.     As a part of Lanter's direction and control over C Pepper, Lanter assigned a financial analyst to direct and oversee C Pepper's business, accounting, and financial processes.

**Answer:  Defendant denies the allegations in paragraph 22 of the Complaint.**

23.     James Pepper used to be a direct employee of Lanter. However, Lanter came up with a scheme to prop him up as a strawman, through an LLC that he owned (C Pepper), but whose business, payroll, accounting, and financial operations Lanter effectively directed and controlled, to employ truck drivers for Lanter's business.

**Answer:   Defendant admits that James Pepper was previously employed by Defendant over 20 years ago but denies his prior employment has any relevancy to this case. Defendant otherwise denies the allegations in paragraph 23 of the Complaint.**

24.     Acting in the interest of C Pepper, in association and conspiracy with Lanter, and under Lanter's direction and control, James Pepper allowed and helped facilitate the unlawful conduct alleged herein.

**Answer:  Defendant denies the allegations in paragraph 24 of the Complaint.**

25.     Due to the extreme level of control that Lanter exerted over C Pepper, and their highly interrelated business operations, Defendants are joint employers, constitute an integrated enterprise, and/or otherwise have an association or relationship that makes Defendants jointly and severally responsible and liable for the claims in this case.

**Answer:  Defendant denies the allegations in paragraph 25 of the Complaint.**

26.     Defendants share the same corporate headquarters at 1600 Wayne Lanter Ave., Madison, Illinois 62060.

**Answer:  Defendant denies the allegations in paragraph 26 of the Complaint.**

27.     Defendants hire individuals to drive established delivery routes out of Lanter distribution centers in numerous states, including at least the following: Kansas; Georgia; Louisiana; North Dakota; and Tennessee.

**Answer:  Defendant denies the allegations in paragraph 27 of the Complaint.**

28.     Flinn and other delivery drivers reported to work at and drove trucks out of Lanter distribution centers.

**Answer:  Defendant denies the allegations in paragraph 28 of the Complaint.**

29.     Flinn and other delivery drivers were issued Lanter fuel cards to pay for fuel. Fuel costs were later charged back to drivers as itemized deductions on the paystubs issued to them.

**Answer:  Defendant denies the allegations in paragraph 29 of the Complaint.**

30.     Lanter states that it does not utilize subcontractors to complete its deliveries.

**Answer:  Defendant admits its website states on the FAQ page that it "do[es] not use subcontractors to complete the final delivery to your store, branch, or dealer. Our success has always depended on the high quality and solid commitment mix of owner-operators and long term carrier partners." Defendant otherwise denies the allegations in paragraph 30 of the Complaint.**

***Defendants Fraudulently Misclassify Drivers as Independent Contractors***

31.     On April 4, 2019, Flinn began working as a truck driver for Defendants in Kansas.

**Answer:  Defendant denies the allegations in paragraph 31 of the Complaint.**

32.     Flinn and other drivers hired by Defendants in Kansas and throughout the United States clearly were and are employees under the law, but Defendants willfully misclassify them as independent contractors.

**Answer:  Defendant denies the allegations in paragraph 32 of the Complaint.**

33.     By misclassifying the drivers as independent contractors, Defendants unlawfully shift the burden of paying the employer's share of payroll taxes from itself to its drivers, and violate numerous other legal obligations they owe to the drivers based on their status as employees.

**Answer:  Defendant denies the allegations in paragraph 33 of the Complaint.**

34.     The services provided by Flinn and other drivers are an integral part of Defendants' business.

**Answer:  Defendant denies the allegations in paragraph 34 of the Complaint.**

35.     Drivers' services are heavily integrated with Defendants' business operations and significantly affect its business success.

**Answer:  Defendant denies the allegations in paragraph 35 of the Complaint.**

36.     Defendants retain and exercise control and direction over the manner in which drivers perform their work.

**Answer:  Defendant denies the allegations in paragraph 36 of the Complaint.**

37.     Defendants dictate the hours and days of work.

**Answer:  Defendant denies the allegations in paragraph 37 of the Complaint.**

38.     Defendants dictate when, where, and how drivers complete their work.

**Answer:  Defendant denies the allegations in paragraph 38 of the Complaint.**

39.     Defendants provide training to the drivers after it hires them.

**Answer:  Defendant denies the allegations in paragraph 39 of the Complaint.**

40.     Defendants provide the trucks, equipment, and tools that drivers use to perform their work.

**Answer:  Defendant denies the allegations in paragraph 40 of the Complaint.**

41.     Drivers do not invest in their own work facilities with respect to their work for Defendants.

**Answer:  Defendant denies the allegations in paragraph 41 of the Complaint.**

42.     Drivers have no opportunity for profit or loss with respect to their work for Defendants.

**Answer:  Defendant denies the allegations in paragraph 42 of the Complaint.**

43.     Defendants pay the drivers a fixed daily wage. Defendants unilaterally impose, at their whim, alleged "costs" for vehicle rental, fuel, and insurance, which they add to, and then simultaneously "deduct" from, drivers' paystubs to "net" the fixed daily wage.

**Answer:  Defendant denies the allegations in paragraph 43 of the Complaint.**

44.     Drivers had continuous relationships with Defendants.

**Answer:  Defendant denies the allegations in paragraph 44 of the Complaint.**

45.     Drivers do not incur a significant investment to work for Defendants because Defendants provide all necessary equipment and tools.

**Answer:  Defendant denies the allegations in paragraph 45 of the Complaint.**

46.     Defendants treated the drivers as alleged above throughout the limitations period and through the present.

**Answer:  Defendant denies the allegations in paragraph 46 of the Complaint.**


*Defendants Willfully Issue Fraudulent Paystubs to Flinn and Other Drivers*

47.     The parties agreed that Flinn would be paid $210 per day for his work.

**Answer:  Defendant denies the allegations in paragraph 47 of the Complaint.**

48.     Flinn understood that he would receive a weekly paycheck, and Defendants would provide him with a truck and pay for fuel, insurance, and all other expenses associated with the work.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 48 of the Complaint and therefore denies them.**

49.     Flinn generally worked five days per week, so he expected to be compensated at the rate of $1050 per week, with occasional increases for specials and weeks he worked six days.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 49 of the Complaint and therefore denies them.**

50.     For example, Flinn earned $25 in specials in his first full week of work, so he expected his weekly paystub would show $1075 in pay.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 50 of the Complaint and therefore denies them.**

51.     Instead, Flinn's first paystub showed $2159.90 of gross pay with the following "deductions": (1) $89.90 for insurance; (2) $370 for vehicle rental; and (3) $650 for fuel.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 51 of the Complaint and therefore denies them.**

52.     With those "deductions," Flinn's pay came out to $1075.00.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 52 of the Complaint and therefore denies them.**

53.     According to his paystub, Flinn was actually paid $431.98 per day, but the deductions brought the total down to $210 per day.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 53 of the Complaint and therefore denies them.**

54.     Defendants charged Flinn the same daily fuel "deductions" regardless of how many miles he drove, how many gallons of fuel he used, or the actual cost of the fuel (per gallon or total).

**Answer:  Defendant denies the allegations in paragraph 54 of the Complaint.**

55.     The fraudulent nature of the "deductions" depicted on his paystubs became especially apparent during the period Flinn trained a new driver. Even though Flinn and the trainee were both riding in the same truck together and using the same fuel during the training period, Defendants deducted the same usual daily deductions for vehicle rental, fuel, and insurance from *both of their paychecks* for that period.

**Answer:  Defendant denies the allegations in paragraph 55 of the Complaint.**

56.     Defendants also improperly deducted other costs, such as "training" and "damage" costs, from Flinn's pay.

**Answer:  Defendant denies the allegations in paragraph 56 of the Complaint.**

57.     Defendants treated the other drivers the same way, i.e., they willfully issued paystubs with fraudulent and inaccurate information about their wages and so-called "deductions" from their wages, and it made unlawful deductions from their pay.

**Answer:  Defendant denies the allegations in paragraph 57 of the Complaint.**

58.     James Pepper knowingly permitted C Pepper to wrongfully withhold wages and fail to pay all wages due in violation of state wage payment laws.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 58 of the Complaint and therefore denies them.**

*Flinn Calls Out Defendants' Fraudulent Reporting*

59.     Flinn recognized that Defendants were improperly treating him and other drivers as independent contractors, not employees.

**Answer:   Defendant denies it employed Plaintiff. Defendant is without sufficient knowledge or information to form a belief as to the truth of what Plaintiff "recognized" and therefore denies the allegations in paragraph 59 of the Complaint.**

60.     Flinn recognized that the inaccurate and fraudulent paystubs Defendants issued to him and other drivers could create tax problems for them.

**Answer:   Defendant denies it employed Plaintiff or issued Plaintiff paystubs. Defendant is without sufficient knowledge or information to form a belief as to the truth of what Plaintiff "recognized" and therefore denies the allegations in paragraph 60 of the Complaint.**

61.     Flinn talked to his tax preparer and legal counsel about these issues.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 61 of the Complaint and therefore denies them.**

62.     After talking to his tax preparer and legal counsel, Flinn met with his manager, Randi Wood, and made a complaint that (1) he was really an employee but was misclassified as an independent contractor, and (2) the expenses added to and "deducted" from his wages on his paystubs were factually inaccurate and fraudulent, which could create tax problems for him.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 62 of the Complaint and therefore denies them.**

63.     Wood asked Flinn if he was planning to sue C Pepper.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 63 of the Complaint and therefore denies them.**

64.     Shortly after this conversation, Defendants terminated Flinn's employment.

**Answer:  Defendant denies the allegations in paragraph 64 of the Complaint.**


*Defendants Willfully File and Issue Fraudulent Tax Documents*

65.     In 2020, many months after Flinn lodged his complaints, Defendants filed and issued an IRS Form 1099-MISC ("1099") to Flinn for the 2019 calendar year.

**Answer:  Defendant denies the allegations in paragraph 65 of the Complaint.**

66.     By filing and issuing the 1099, Defendants willfully misrepresented that Flinn was an independent contractor rather than an employee.

**Answer:  Defendant denies the allegations in paragraph 66 of the Complaint.**

67.     In the 1099, Defendants reported $24,404.90 in "nonemployee compensation" (Box 7) paid to Flinn in 2019.

**Answer:  Defendant denies the allegations in paragraph 67 of the Complaint.**

68.     The nonemployee compensation reported in Box 7 on the 1099 included the grossed-up expenses that were added to, and then "deducted" from, Flinn's paystubs.

**Answer:  Defendant denies the allegations in paragraph 68 of the Complaint.**

69.     Thus, the fraudulent 1099 filed by Defendants reported more than twice as much compensation paid to Flinn than Defendants had actually paid to him.

**Answer:  Defendant denies the allegations in paragraph 69 of the Complaint.**

70.     Upon information and belief, Defendants have been engaging in this same unlawful scheme with respect to its drivers for years.

**Answer: Defendant denies the allegations in paragraph 70 of the Complaint.**

71.     Upon information and belief, Defendants falsely inflate nonemployee compensation paid to all of their drivers in willfully filed and issued fraudulent 1099s for the purpose of increasing the amount it claims as business expenses, so it can underpay its own taxes.

**Answer: Defendant denies the allegations in paragraph 71 of the Complaint.**

72.     By willfully filing and issuing fraudulent 1099s to its drivers, Defendants put the drivers between a rock and a hard place – they are forced to choose between: (1) paying taxes on more than twice as much nonemployee income than they actually received, or (2) claiming business deductions for expenses they know to be false.

**Answer: Defendant denies the allegations in paragraph 72 of the Complaint.**

73.     In addition, by willfully misclassifying its drivers as independent contractors and filing and issuing fraudulent 1099s to its drivers, Defendants unlawfully shift the burden of paying the employer's share of payroll taxes from itself to its drivers.

**Answer: Defendant denies the allegations in paragraph 73 of the Complaint.**

74.     Other C Pepper drivers recognize that the Defendants' misclassification and payroll scheme is unlawful. On a popular hiring website, a former C Pepper driver in Lafayette, Louisiana left the following review:

> Forced to sign a blank independent contractors contract. Manager lies about everything. Forced to sort company's customer's freight for free. Charges you for $650 per week for fuel whether you use that much or not. Forces you to use the trucks they lease and charge double the normal lease fee. Basically cheat you out of most of your money.

> *C Pepper Logistics Employee Reviews*, INDEED, https://www.indeed.com/cmp/C-Pepper-Logistics/reviews  (last visited March 12, 2020).

**Answer: Defendant denies it misclassified anyone or engaged in any "payroll scheme." Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 74 of the Complaint and therefore denies them.**

75.     Similarly, a former C Pepper driver in Johnson City, Tennessee left the following review:

> They 1099 you but treat you as an employee and expect you to devote all your time
> to them and not pay u any extra stay away from this company at all cost.

*C Pepper Logistics Employee Reviews*, INDEED, https://www.indeed.com/cmp/C-Pepper-Logistics/reviews (last visited March 12, 2020).

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 75 of the Complaint and therefore denies them.**

<b>Class Allegations</b>

76.     Flinn incorporates and realleges all other allegations in the Complaint as if fully set forth herein.

**Answer:   Defendant incorporates its responses to all other allegations in the Complaint as if fully set forth herein.**

77.     Flinn brings this action on behalf of himself and those similarly situated across the United States.

**Answer:  Defendant admits Plaintiff purports to bring his claims as a class action. Defendant denies that this case is suitable for class action treatment and therefore denies the remaining allegations in paragraph 77 of the Complaint.**

78.     In accordance with Federal Rule of Civil Procedure 23, Flinn brings this case as a class action on behalf of a Class consisting of:

All individuals who performed services as a driver for C Pepper Logistics LLC and were treated as an independent contractor at any time on or after January 1, 2014 (including new drivers who are hired after this Complaint is filed).

**Answer:  Defendant admits Plaintiff purports to bring his claims as a class action. Defendant denies that this case is suitable for class action treatment and therefore denies the remaining allegations in paragraph 78 of the Complaint.**

79.    Class certification is appropriate under Fed. R. Civ. P. 23(a), (b)(1), (2), and/or (3), and (c)(4).

**Answer:  Defendant denies the allegations in paragraph 79 of the Complaint.**

80.    The class satisfies the numerosity requirement because it is composed of hundreds, if not thousands, of persons in numerous locations. The number of class members is so large that joinder of all its members is impracticable.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 80 of the Complaint and therefore denies them.**

81.    There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to: whether Defendants misclassified Class Members as independent contractors; whether Defendants willfully filed fraudulent 1099-MISC forms with respect to Class Members; whether Defendants interfered with Class Members' ability to participate in the company's employee benefit plans; and whether Class Members are entitled to damages.

**Answer:  Defendant denies the allegations in paragraph 81 of the Complaint.**

82.    Flinn's claims are typical of the claims of the Class Members because Flinn's claims, and the claims of all Class Members, arise out of the same conduct, policies, and practices

of Defendants as alleged herein, and all Class Members are similarly affected by Defendants' wrongful conduct.

**Answer:  Defendant denies the allegations in paragraph 82 of the Complaint.**

83.     Flinn will fairly and adequately represent the Class and has retained counsel competent in the prosecution of class action litigation. Flinn has no interests antagonistic to those of other members of the Class. Flinn is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

**Answer:  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 83 of the Complaint and therefore denies them.**

84.     Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

**Answer:  Defendant denies the allegations in paragraph 84 of the Complaint.**

85.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Likewise, particular issues, including those listed in paragraph 63, are appropriate for certification under Rule 23(c)(4), because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interest therein.

**Answer:  Defendant denies the allegations in paragraph 85 of the Complaint.**

86.     In the alternative, certification under Rule 23(b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

**Answer:  Defendant denies the allegations in paragraph 86 of the Complaint.**

## Causes of Action and Claims for Relief

## Count I – Fraudulent Filing of Information Returns, in Violation of 26 U.S.C. § 7434 (against Defendants C Pepper and James Pepper)[1]

87.     Flinn incorporates and realleges all other allegations in the Complaint as if fully set forth herein.

**Answer:  Defendant incorporates its responses to all other allegations in the Complaint as if fully set forth herein.**

88.     Flinn brings this claim on behalf of himself and Class Members.

**Answer:  Defendant admits Plaintiff purports to bring his claims as a class action. Defendant denies that this case is suitable for class action treatment and therefore denies the remaining allegations in paragraph 88 of the Complaint.**

89.     C Pepper and James Pepper issued 1099s, rather than W-2s, to Class Members, despite the fact that Class Members were employees of C Pepper and James Pepper.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without**

---

[1] The statements in footnote 1 of the Complaint are not factual allegations to which a response is required. To the extent a response is required, Defendant denies those allegations.

sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 89 of the Complaint and therefore denies them.

90.      C Pepper and James Pepper substantially overreported the amount of compensation paid to Class Members in the 1099s.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 90 of the Complaint and therefore denies them.**

91.      Upon information and belief, C Pepper and James Pepper willfully issued fraudulent 1099s to Class Members throughout the limitations period.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 91 of the Complaint and therefore denies them.**

92.      At the time it issued the 1099s, C Pepper and James Pepper knew that Class Members were employees, not independent contractors.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 92 of the Complaint and therefore denies them.**

93.      At the time it issued the 1099s, C Pepper and James Pepper knew that they actually paid Class Members significantly less than the amounts listed on the 1099s.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 93 of the Complaint and therefore denies them.**

94.     At the time it issued the 1099s, C Pepper and James Pepper knew that the "deductions" reported on Class Members' paystubs, upon which the compensation amounts reported on their 1099s were based, were false.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 94 of the Complaint and therefore denies them.**

95.     Despite knowledge that the 1099s contained fraudulent information, C Pepper and James Pepper willfully filed and issued them.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 95 of the Complaint and therefore denies them.**

96.     Because C Pepper and James Pepper willfully filed fraudulent information returns with respect to payments purported to be made to Class Members, Flinn, on behalf of himself and other Class Members, is entitled to bring a civil action for damages against C Pepper and James Pepper pursuant to 26 U.S.C. § 7434.

**Answer:  Plaintiff alleges Count I against C Pepper only; therefore, a response from Defendant is not required. To the extent a response is required, Defendant is without**

**sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 96 of the Complaint and therefore denies them.**

### Count II – Violation of State Common Law and Wage Laws
### (against All Defendants)

97.     Flinn incorporates and realleges all other allegations in the Complaint as if fully set forth herein.

**Answer:   Defendant incorporates its responses to all other allegations in the Complaint as if fully set forth herein.**

98.     Flinn brings this claim on behalf of himself and the Class.

**Answer:  Defendant admits Plaintiff purports to bring his claims as a class action. Defendant denies that this case is suitable for class action treatment and therefore denies the remaining allegations in paragraph 98 of the Complaint.**

99.     Under applicable state statutes and common law, employers are precluded from making improper deductions from employees' wages.

**Answer:  The allegations in paragraph 99 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 99 of the Complaint.**

100.     Defendants made improper and unlawful deductions from Flinn's and other Class Members' wages, in violation of various state wage payment laws and common law.

**Answer:  Defendant denies the allegations in paragraph 100 of the Complaint.**

101.     Flinn, individually and on behalf of Class Members, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

a.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Flinn is a proper class representative; and appoint Flinn's Counsel as Class Counsel;

b.    That Flinn and the Class be granted the declaratory relief sought herein;

c.    That the Court award Flinn and Class Members all statutory and common law damages, including but not limited to economic loss, compensatory, consequential, and/or general damages in an amount to be determined at trial;

d.    That the Court award statutory damages, trebled, punitive, and/or exemplary damages, to the extent permitted by law;

e.    That the Court award all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution;

f.    That Lanter be held jointly and severally liable for some or all of the claims in this case, as will be borne out during discovery;

g.    That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

h.    That the Court award to Flinn and Class Members all costs and expenses of the action, including attorneys' fees;

i.    That the Court award pre- and post-judgment interest at the maximum legal rate; and

j.    That the Court grant all such other relief as it deems just and proper.

**Answer:   The statements in paragraph 101 of the Complaint are not factual allegations to which a response is required. To the extent a response is required, Defendant denies those allegations.**

102.     Flinn reserves the right to amend his Complaint and claims, including but not limited to adding additional Defendants, adding additional claims, and/or modifying his legal theories, as may be warranted by further investigation and discovery.

**Answer:   The statements in paragraph 102 of the Complaint are not factual allegations to which a response is required. To the extent a response is required, Defendant denies those allegations.**

## II.
## AFFIRMATIVE DEFENSES

Pursuant to Federal Rule of Civil Procedure 8(c), Defendant pleads the following affirmative defenses to Plaintiff's Complaint, without in any way agreeing or conceding that it has the burden of proof or persuasion of any of these issues or that it is liable for any claims:

1.     The Complaint fails to state a cause of action against Defendant upon which relief can be granted.

2.     Some or all of Plaintiff's claims are barred by the doctrines of waiver or estoppel.

3.     Some or all of Plaintiff's claims are barred by the doctrines of ratification or acquiescence.

4.     Some or all of Plaintiff's claims are barred by the doctrine of unclean hands.

5.     Plaintiff's claims for damages are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

6.     Some or all of Plaintiff's claims are barred because Plaintiff has been paid in full.

7.     Some or all of Plaintiff's claims are barred by the applicable statute of limitations.

8.     Some or all of Plaintiff's claims are barred because Plaintiff consented to the alleged conduct of Defendant.

9.     Some or all of Plaintiff's claims resulting from a reclassification of Plaintiff as an independent contractor must be reduced by the doctrine of set off, rescission, and/or restitution.

10.     Some or all of Plaintiff's claims are barred because Plaintiff has been fully compensated and has effectuated an accord and satisfaction of his claims.

11.     To the extent Plaintiff seeks equitable relief, Plaintiff is not entitled to that relief because (1) he has an adequate remedy at law, and (2) he lacks standing.

12.     Plaintiff's claims fail to the extent he was required to exhaust administrative remedies.

13.     Some or all of Plaintiff's claims for improper deductions are barred because Plaintiff authorized those deductions.

14.     Some or all of Plaintiff's claims for improper deductions are barred because the deductions were for Plaintiff's benefit.

15.     Plaintiff's claims fail to the extent they are preempted by federal law, including the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501, and the Federal Leasing Regulations, 49 C.F.R. Part 376.

16.     Under *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017), the Court lacks personal jurisdiction over Defendant with respect to the claims of some or all of the putative class members.

17.     Pre-judgment interest may not be granted because the damages claimed by Plaintiff are not sufficiently certain to allow an award of pre-judgment interest.

WHEREFORE, Defendant requests judgment as follows:

A.     that this action not be certified as a class action;

B.     that Plaintiff takes nothing by way of the Complaint;

C.     that judgment be entered against Plaintiff and in favor of Defendant;

D.    that Defendant be awarded its attorney fees and costs incurred in this case; and

E.    that Defendant be awarded all other necessary and proper relief.

Dated: February 9, 2021                          Respectfully submitted,

                                                  /s/ James C. Sullivan
                                                 James C. Sullivan, D. Kan. No. 70453
                                                 FISHER & PHILLIPS, LLP
                                                 4900 Main Street, Suite 650
                                                 Kansas City, MO 64112
                                                 P: 816-842-8770
                                                 F: 816-842-8767
                                                 jsullivan@fisherphillips.com


                                                 Christopher J. Eckhart, *admitted pro hac vice*
                                                 Elizabeth M. Bolka, *admitted pro hac vice*
                                                 James A. Eckhart, *admitted pro hac vice*
                                                 SCOPELITIS, GARVIN, LIGHT, HANSON &
                                                 FEARY, P.C.
                                                 10 West Market Street, Suite 1400
                                                 Indianapolis, IN 46204
                                                 P: 317-637-1777
                                                 F: 317-687-2414
                                                 ceckhart@scopelitis.com
                                                 ebolka@scopelitis.com
                                                 jeckhart@scopelitis.com

                                                 Attorneys for Defendant,
                                                 Lanter Delivery Systems, LLC

4848-2012-9498, v. 9

25