IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID FLINN, on behalf of himself and all others similarly situated,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**C PEPPER LOGISTICS LLC and LANTER DELIVERY SYSTEMS, LLC,**<br><br>    **Defendants.** | Case No. 20-CV-02215-JAR-KGG |

**MEMORANDUM AND ORDER**

Plaintiff David Flinn brings this putative class action against Defendants C Pepper Logistics LLC, Lanter Delivery Systems, LLC, and James Pepper, alleging Defendants misclassified their truck driver employees as independent contractors, in violation of 26 U.S.C. § 7434 and state wage laws. Before the Court is Defendant James Pepper's Motion for Judgment on the Pleadings (Doc. 44). The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court grants in part and denies in part the motion.

**I.    Standard**

The standard for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that applied to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1]  To pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that a defendant

---

[1] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

has acted unlawfully, but requires more than "a sheer possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

Count I of the Second Amended Complaint alleges fraud.  Under Fed. R. Civ. P. 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[10]  The rule's purpose is to provide the defendant fair and adequate notice of

---

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *Id.*

[7] *Id.* at 679.

[8] *Id.*

[9] *Id.* at 678.

[10] Fed. R. Civ. P. 9(b).

the claim and to allow the defendant to respond on an informed basis.[11] A fraud claim requires "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[12] The rule allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to be averred generally.[13]

## II.    Facts Alleged in the Second Amended Complaint

The following relevant facts are alleged in the Second Amended Complaint and accepted as true for purposes of deciding this motion.

Defendant Lanter Delivery Systems, LLC ("Lanter") provides overnight unattended delivery service of time-sensitive parts for major auto, agriculture, and heavy-duty truck original equipment manufacturers ("OEMs") and industrial supply and equipment distributors. C Pepper Logistics LLC ("C Pepper") is a U.S. Department of Transportation-registered motor carrier that provides trucking and transfer services. Lanter created a business model in which it props up and controls what it calls "dedicated carrier partners," including C Pepper. Lanter exercised direction and control over almost every aspect of C Pepper's business operations, including but not limited to, the structure of its business model, its accounting and payroll functions, and arranging and guaranteeing its truck leases.

James Pepper used to be a direct employee of Lanter. However, Lanter came up with a scheme to prop him up as a strawman through a limited liability company that he owned (C Pepper), but whose business, payroll, accounting, and financial operations Lanter effectively directed and controlled, to employ truck drivers for Lanter's business. Acting in the interest of C

---

[11] *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

[12] *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

[13] Fed. R. Civ. P. 9(b); *see Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

Pepper, in association and conspiracy with Lanter, and under Lanter's direction and control, James Pepper allowed and helped facilitate the unlawful conduct alleged by Plaintiff. James Pepper knowingly permitted C Pepper to wrongfully withhold wages and fail to pay all wages due, in violation of state wage payment laws. Flinn alleges generally that Defendants C Pepper, and James Pepper fraudulently misclassified drivers as independent contractors, willfully issued fraudulent paystubs to Flinn and other delivery drivers, and willfully filed and issued fraudulent tax documents showing that Flinn and other delivery drivers were independent contractors, rather than employees.

Flinn alleges two counts for relief: (1) fraudulent filing of information returns, in violation of 26 U.S.C. § 7434 against C Pepper and James Pepper; and (2) violation of state wage laws against all Defendants.

### III.   Discussion

James Pepper moves for judgment on the pleadings on the tax fraud claim on the basis that Flinn fails to plead fraud with particularity, and on the wage claim because Flinn fails to allege facts sufficient to pierce the corporate veil and hold him liable for C Pepper's conduct. Flinn responds that James Pepper waived any challenge under the heightened pleading standard in Rule 9(b) because he failed to preserve that defense in his March 18, 2021 Answer.[14] Moreover, Flinn asserts that his claims allege direct liability against James Pepper, so there is no need to allege facts in support of piercing the corporate veil.

    A.    **Count I: Fraudulent Filing of Information Returns in Violation of 26 U.S.C. § 7434**

Flinn alleges in Count I of the Second Amended Complaint that C Pepper and James

---

[14] Doc. 38.

4

Pepper violated 26 U.S.C. § 7434 by issuing 1099 forms to Flinn and the class members that overreported the amount of their compensation, with knowledge that Flinn and the class members were employees, rather than independent contractors.

The statute provides: "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."[15]  The elements of this cause of action are: "(1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return."[16]

This Court previously held on Defendant Lanter's motion to dismiss that § 7434 liability can lie beyond the principal filer.[17]  On that motion, the Court considered whether Flinn's allegation that "Defendants" issued the 1099s was sufficient under Rule 9(b).  The Court found that under Rule 9(b), this allegation was insufficient to demonstrate that Lanter specifically issued an information return, the first element of Flinn's claim.  Accordingly, the Court found that Flinn's proposed Second Amended Complaint was futile as to his § 7434 claim against Lanter.  Thus, the operative Second Amended Complaint omits that claim as to Lanter and names only C Pepper and James Pepper: "*C Pepper and James Pepper* issued 1099s, rather than W-2s, to Class Members, despite the fact that Class Members were employees of C Pepper and James Pepper."[18]

James Pepper argues that the Second Amended Complaint's allegations as to his conduct fail for the same lack of particularity this Court previously found as to Lanter.  He argues that

---

[15] 26 U.S.C. § 7434.

[16] *Czerw v. Lafayette Storage & Moving Corp.*, No. 16-CV-6701-FPG, 2018 WL 5859525, at *2 (W.D.N.Y. Nov. 9, 2018).

[17] Doc. 26.

[18] Doc. 31 ¶ 89 (emphasis added).

there is no specific allegation that he personally issued the fraudulent information on behalf of C Pepper. Flinn responds that the allegations in the Second Amended Complaint are sufficient because they explicitly state that James Pepper issued the allegedly fraudulent 1099s. Additionally, Flinn argues that James Pepper waived any defense based on Rule 9(b) by failing to move for dismissal before filing his Answer, which did not preserve a Rule 9(b) defense.

As the Court previously observed with respect to Lanter's motion, "[w]hen fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant."[19] While it is true that the Second Amended Complaint collectively ascribes the same conduct giving rise to the § 7434 violation to C Pepper and James Pepper, ¶ 24 alleges that "[a]cting in the interest of C Pepper, in association and conspiracy with Lanter, and under Lanter's direction and control, James Pepper allowed and helped facilitate the unlawful conduct alleged herein."[20]

As the Court previously observed, under § 7434 culpable agents may be liable under common-law principles of corporate officer liability so that § 7434 "impose[s] liability on any person who willfully causes a fraudulent information return to be filed."[21] Corporate officer liability thus may apply for torts committed in a representative capacity.[22] Given that the Second Amended Complaint alleges that James Pepper is an owner and officer of C Pepper, that James Pepper facilitated the unlawful conduct alleged, and that both C Pepper and James Pepper issued the 1099s, the Court finds that this pleading sufficiently alleges facts to support the elements of

---

[19] *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 933 (D. Kan. 2007) (citing *Odyssey re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)).

[20] Doc. 31 ¶ 24.

[21] *Czerw*, 2018 WL 5859525, at *2.

[22] *Sigurdsson v. Dicarlantonio*, No. 6:12-cv-920-Orl-TBS, 2013 WL 12121866, at *7 (M.D. Fla. Dec. 11, 2013) (collecting cases imposing corporate officer liability for violations of other federal statutes).

Flinn's § 7434 claim under Rule 9(b).[23]  Because the Court finds that Flinn's allegations meet the particularity standard under Rule 9(b), it need not consider whether James Pepper waived a Rule 9(b) defense in his Answer.

### 2.     Count II: State Law Wage Claim

James Pepper argues in his motion that the Second Amended Complaint makes only collective allegations against the Defendants and a formulaic recitation of the elements of the wage claim in Count II.  Flinn responds that he sufficiently alleged James Pepper's role in the state wage violations.

Flinn does not identify the relevant state law for his wage claim in the Second Amended Complaint.  But in his response to James Pepper's motion to dismiss, he cites the Kansas Wage Payment Act ("KWPA") since it would apply to Flinn.[24]  Under the KWPA, a twenty-factor test applies to determine whether an employer/employee relationship exists under the KWPA, a test that "includes economic reality considerations, while maintaining the primary focus on an employer's right to control."[25]  And, under K.S.A. § 44-323(b), "[a]ny officer, manager, major shareholder or other person who has charge of the affairs of an employer, and who knowingly permits the employer to engage in violations of K.S.A. 44-314 or 44-315, and amendments thereto, may be deemed the employer for purposes of this act."

---

[23] Unlike Lanter, the Second Amended Complaint alleges James Pepper's agency relationship with C Pepper, thus allowing him to be liable in his representative capacity as discussed in *Czerw v. Lafayette Storage & Moving Corp.*  2018 WL 5859525, at *2.

[24] The case has not been certified as a class action; therefore, the only relevant Plaintiff at this stage of the proceedings is Flinn.

[25] *Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 76 (Kan. 2014).

"KWPA claims often are asserted against both an organizational defendant and its president."[26] But for liability to attach to an officer or other individual, the statute requires that the person have "charge of the affairs of the employer" and "knowingly permit[] the employer to engage in" a violation of the KWPA. The Second Amended Complaint alleges that "James Pepper knowingly permitted C Pepper to wrongfully withhold wages and fail to pay all wages due in violation of state wage payment laws."[27] However, there are no facts alleged that James Pepper was in charge of the affairs of Lanter or C Pepper. The mere fact that he is an officer and member of C Pepper does not suffice. The Second Amended Complaint alleges neither that James Pepper is the sole officer or member of C Pepper, nor that he made the types of decisions for C Pepper that would allow a reasonable inference that he is in charge of that LLC's affairs.[28] In fact, the Second Amended Complaint states that James Pepper used to be a direct employee of Lanter, and that Lanter used him as a strawman to create C Pepper for business, payroll, accounting, and financial operations that would be controlled by Lanter. These allegations fall short of raising an inference that James Pepper was in charge of the affairs of either C Pepper or Lanter. Accordingly, Flinn has failed to plead facts sufficient to hold James Pepper liable under the KWPA.

---

[26] *Abouelenein v. Kan. City Kan. Comm'y Coll.*, No. 18-2670-DDC-JPO, 2020 WL 1528500, at *20–21 (D. Kan. Mar. 31, 2020) (collecting cases).

[27] Doc. 31 ¶ 58.

[28] *See, e.g.*, *Abouelenein*, 2020 WL 1528500, at *20–21 (finding sufficient facts to support KWPA liability against individual defendant where the complaint alleged that he was president of the organization, that he supervised and communicated with plaintiff, and that there was a policy which delegated hiring and compliance with employment agreements to the president); *Violetta v. Steven Bros. Sports Mgmt., LLC*, No. 16-1193-JTM, 2018 WL 2445177, at *13–14 (D. Kan. May 31, 2018) (finding genuine issue of material fact on summary judgment where neither party presented evidence about the individual defendants' participation in the affairs of the LLC); *Fotouhi v. Mobile RF Sol., Inc.*, No. 15-2587-JWL, 2015 WL 3397205, at *4 (D. Kan. May 26, 2015) (denying motion to dismiss where the individual defendant was alleged to have been "solely responsible for all decisions regarding the payment of plaintiff's wages").

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant James Pepper's Motion for Judgment on the Pleadings (Doc. 44) is **granted in part and denied in part**. The motion is granted as to Count II and denied as to Count I.

**IT IS SO ORDERED.**

Dated: August 27, 2021

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE