## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DAVID FLINN, on behalf of himself<br>and all others similarly situated, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No. 20-2215-JAR-KGG |
| | ) | |
| C PEPPER LOGISTICS LLC, LANTER<br>DELIVERY SYSTEMS, LLC, and<br>JAMES PEPPER, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER ON MOTION TO COMPEL

NOW BEFORE THE COURT is Plaintiff's motion to compel compliance with a subpoena it issued to non-party White Line.   (Doc. 104.)   After review of the submissions of Plaintiff, Defendant Lanter, and non-party White Line, the Court **GRANTS** the motion.

## BACKGROUND

This matter is a class action on behalf of truck drivers.   Plaintiff alleges that Defendants, "acting as joint employers, misclassified the truck drivers as independent contractors; issued them fraudulent Form 1099-MISCs each tax year showing compensation in an amount more than two times what they were actually paid; and issued them paystubs each pay period containing fraudulent, unlawful deductions."   (Doc. 105, at 1.)   Plaintiff's Second Amended Complaint contains causes of action for 1) fraudulent filing of 1099 tax forms rather than W-2s while substantially overreporting the amount of

1

compensation paid to class members (Cause of Action I against C Pepper and James Pepper) and 2) violation of state common law and wage law regarding improper deductions from employees' wages (Cause of Action II against all Defendants).   (Doc. 31, at 12-13.)   Plaintiff is seeking damages in excess of $30 million plus damages available under state laws for the unlawful wage deductions.   (Doc. 105, at 1.)

Plaintiff continues that during his employment with Defendants, Defendant C Pepper ("C Pepper") was a "designated carrier partner" of Defendant Lanter.   According to Plaintiff,

> [t]hrough this designated carrier partner relationship, Lanter exerted control over C Pepper's business.   In about August 2020, Lanter purported to terminate its relationship with C Pepper, and all of the managers and 700 truck drivers working for Lanter and the Pepper Defendants began to instead work for Lanter and White Line overnight. White Line now serves as the primary designated carrier partner of Lanter.

(Doc. 105, at 2.)   Allegations of this nature – or any allegations regarding White Line – are notably absent from Plaintiff's Second Amended Class Action Complaint.   (*See generally* Doc. 31.)

Plaintiff issued a subpoena to White Line on July 1, 2021, requesting the production of certain documents.   The parties have resolved all of their disputes but for the following three categories, which have been significantly narrowed:   (1) a representative sample of the agreement form(s) between White Line and the drivers who came from C Pepper to White Line (Request No. 1); (2) a representative sample of pay stubs issued by White Line to these former C Pepper drivers in 2020 (ten examples

2

randomly chosen from among the 700 drivers who transitioned from C Pepper to White Line) (Request No. 5); and (3) a representative sample of the tax forms issued by White Line to these former C Pepper drivers for 2020 (the same ten randomly chosen persons for Request No. 5) (Request 7).   (Doc. 105, at 2.)

Plaintiff has offered to allow White Line to redact the personal/identifying information from the documents and produce them subject to the Protective Order entered in this case.   (*Id*., at 3, 15, and 18.)   Even so, White Line has refused to produce any documents responsive to the (now narrowed) subpoena, objecting that the information sought is irrelevant, unduly burdensome, and seeks disclosure of confidential matter.   (*Id*., at 6; *see generally* Doc. 111.)

## I.      Motions Relating to Subpoenas.

Federal Rule of Civil Procedure 45 governs motions to compel compliance with subpoenas served on third-parties.   *See also **In re EpiPen Marketing, Sales Practices and Antitrust Litigation***, No. 17-MD-2785-DDC-TJJ, 2018 WL 6047179, at *1 (D. Kan. Nov. 19, 2018).   Pursuant to subsection (d)(2)(B) of the Rule, if the individual or entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. Rule 45(d)(3) enumerates circumstances in which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."   Under the rule, the court is required to quash or modify a

3

subpoena requiring "disclosure of privileged or other protected matter, if no exception or waiver applies … ."

## II.   Standards for Discovery.

Courts in this District "have 'long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.'"   *MNM Investments, LLC v. HDM, Inc.*, No. 18-1267-EFM-KGG, 2020 WL 1433482, n.1 (D. Kan. March 24, 2020) (quoting *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) (internal citations omitted).   Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.   Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1).   As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable.   *Holick v. Burkhart*, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face.   *Williams v. Board of*

4

*Co. Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000).   Relevance is to be "broadly

construed at the discovery stage of the litigation and a request for discovery should

be considered relevant if there is any possibility the information sought may be

relevant to the subject matter of the action."   *Smith v. MCI Telecomm. Corp.*, 137

F.R.D. 25, 27 (D. Kan. 1991).

Once this low burden of relevance has been established, the legal burden

regarding the defense of a motion to compel resides with the party opposing the

discovery request.   *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661,

662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based

on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears

the burden to support the objections).   Thus, "the objecting party must specifically

show in its response to the motion to compel, despite the broad and liberal

construction afforded by the federal discovery rules, how each request for

production or interrogatory is objectionable."   *Sonnino v. University of Kansas*

*Hosp. Authority*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).   Within this context,

the Court will address the categories of information at issue.

**III.   Objections to Requested Information.**

   **A.   Relevance (Categories 1, 5, and 7).**

"Relevance is construed broadly to encompass any matter that bears on, or

that reasonably could lead to other matter that could bear on, any issue that is or

may be in the case.'"   *Marso v. SafeSpeed, LLC*, 2021 WL 4149075 (D. Kan.

Sept. 13, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978)).   Plaintiff argues that the information is facially relevant.   The Court

agrees.

Plaintiff's Complaint alleges that Lanter, C Pepper, and James Pepper were

"joint employers, constitute an integrated enterprise, and/or otherwise have an

association or relationship that makes Defendants jointly and severally responsible

and liable for the claims in this case."   (Doc. 31, at 3.)   The Complaint further

alleges that Lanter created a model for its "dedicated carrier partners" and

"exercised direction and control over almost every aspect of C Pepper's business

operations, including but not limited to the structure of its business model, its

accounting and payroll functions, and arranging and guaranteeing its truck

leases."[1]   (*Id.*)

Plaintiff argues that the information sought by the subpoena "will show how

the same truck drivers employed by C Pepper and Lanter were treated when their

employment switched overnight to White Line and Lanter."[2]   (Doc. 105, at 8.)

Plaintiff continues that

---

[1] The Court notes that Lanter denies these allegations.

[2] This objection relates to all three (narrowed) categories of information sought by the subpoena (Categories 1, 5, and 7).

> [o]bviously, this information may bear on Lanter's denial
> that it dominated and controlled the joint employment
> relationship between Lanter and C Pepper, because
> Lanter and White Line had (at least nominally) the same
> relationship.   In addition, if the subpoenaed documents
> show that the Lanter and White Line partnership
> classified and treated the truck drivers in a materially
> different manner than the Lanter and C Pepper
> partnership, they may be relevant to demonstrate the
> impropriety of Lanter and C Pepper's classification and
> treatment of the truck drivers.

(*Id.*, at 8.)

White Line responds that the documents requested are irrelevant to

Plaintiff's two remaining causes of action.   In ruling on Defendants' motion to

dismiss and Plaintiff's motion to amend, the District Court held that as to the

alleged fraudulent filing of information returns (Count I), Plaintiff must establish

"'(1) the defendant issued an information return; (2) the information return was

fraudulent; and (3) the defendant willfully issued the fraudulent information

return.'"   (Doc. 26, at 6 (quoting ***Czerw v. Lafayette Storage & Moving Corp.***,

No. 16-CV-6701-FPG, 2018 WL 5859525, at *2 (W.D.N.Y. Nov. 9, 2018)).)

The District Court also held that it would be futile to "generically attribute

filing conduct to Defendants as a whole."   *See id*. at 12.   This cause of action,

therefore, remains against Defendants C Pepper and James Pepper only.   The

District Court denied Plaintiff's request to amend his Complaint to include

allegations that that Lanter, as an alleged joint employer, issued a fraudulent tax

document to Plaintiff.   (Doc. 31, at 12.)   White Line argues that "[i]f Plaintiff cannot attribute the conduct to Lanter, his alleged joint employer, the documents sought in the subpoena to White Line – an entity which never employed or contracted with Plaintiff – clearly have no bearing on Count I."   (Doc. 111, at 5.)

White Line also argues that the information sought by the subpoena is irrelevant to Count II, violations of common law and wage laws.   In its Order on the competing motions to amend and dismiss, the District Court noted that an employment relationship must apply before Defendants will be held liable under state wage statutes for this cause of action.   (Doc. 26, at 12.)   White Line correctly points out that Plaintiff did not identify it as an alleged employer in the Complaint, First Amended Complaint, or Second Amended Complaint.   (Doc. 111, at 5 (citing Docs. 1, 12, 31).)   White Line continues that because it "never employed Plaintiff, the records sought by Plaintiff in the subpoena to White Line have no possible bearing on his claim in Count II that his employers improperly failed to pay him wages."   (Doc. 111, at 5 (citing Doc. 111-1, at ¶ 3).)

Plaintiff replies that the requested documents relate directly to allegations contained in his Second Amended Complaint including:

> • Lanter created a business model in which it props up
> and controls what it calls "dedicated carrier partners,"
> including C Pepper.

• As a part of Lanter's direction and control over C Pepper, Lanter assigned a financial analyst to direct and oversee C Pepper's business, accounting, and financial processes.

• Lanter exercised direction and control over almost every aspect of C Pepper's business operations, including but not limited to the structure of its business model, its accounting and payroll functions, and arranging and guaranteeing its truck leases.

• Under this business model, Flinn and other class members, who are legally employees, are misclassified as independent contractors, and are subject to unlawful wage deductions, in violation of the Kansas Wage Payment Act and other state statutes and common law.

• Due to the level of control that Lanter exerted over C Pepper, and their highly interrelated business operations, Defendants are joint employers, constitute an integrated enterprise, and/or otherwise have an association or relationship that makes Defendants jointly and severally responsible and liable for the claims in this case.

(Doc. 114, at 2 (citing Doc. 32, at 5-6, 21); *see also* Doc. 31, at ¶¶ 20-22, 25, 62, 81.)   Plaintiff continues that "the literal overnight transition of more than 700 truck driver class members from being C Pepper workers to White Line workers," which is alleged to have occurred at the direction and control of Lanter, "provides a unique opportunity to examine the manner in which Lanter controls its designated carrier partners, as well as any differences or similarities in how these

partners under its control treated the exact same group of drivers, all of whom fall within the class definition."   (Doc. 114, at 3.)

Plaintiff alleges that this establishes the relevance of the requested documents.   Given the broad scope of discovery relevance, *MCI Telecomm. Corp.*, 137 F.R.D. at 27, the Court agrees.   White Line's relevance objection is **overruled**.

### B.      Burden (Categories 1, 5, and 7).

The Court will not rely on conclusory statements to support a finding of undue burden.   *Transport Systems, Inc. v. TAFS, Inc.*, No. 20-2379-HLT-KGG, 2021 WL 877003 (March 9, 2021).   Rather, unless a discovery request is facially unduly burdensome, the party resisting the request has the burden to support its objection. *See Swackhammer*, 225 F.R.D. at 661, 662, 666 (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections).

Plaintiff argues that White Line has not and cannot support an objection of undue burden as Plaintiff has "gone above and beyond to narrow the scope of the subpoena to minimize any burden to White Line … ."   (Doc. 105, at 9.)   The Court notes that White Lines' brief in opposition contains only passing reference, rather than a substantive discussion, of this objection.   (*See generally* Doc. 111.) As such, the undue burden objection is **overruled**.

C.     Privacy/Confidentiality (Category 7).

The production of private or confidential information is not, in and of itself, a valid reason to withhold discovery as the production could governed by a protective order.   *Isberner v. Walmart, Inc.*, No. 20-2001-JAR-KGG, 2020 WL 6044097, at *5 (D. Kan. Oct. 13, 2020) (citing *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4008009, at *2 (D. Kan. Sept. 9, 2011). "'A concern for protecting confidentiality does not equate to privilege.'"   *Id.*

The Court notes that a Protective Order has been entered in this case.   (Doc. 51.)   Further, White Lines' brief in opposition appears to abandon this objection. (*See generally* Doc. 111.)

As stated above, Topic 7, as narrowed, seeks "a representative sample of the tax forms issued by White Line to these former C Pepper drivers for tax year 2020 (for the same ten persons randomly chosen for the response to Request No. 5)." (Doc. 105, at 2.)   White Line's discussion of this topic arguably touches on this objection wherein it contends that the tax documents are non-discoverable.   White Line contends that this request is "particularly problematic" as tax returns "'are not generally discoverable, and there is a public policy against exposure of production of them.'"   (Doc. 111, at 7 (quoting *Audiotext Comm'ns. Network v. US Telecom*, No: 94-2395-GTV, 1995 U.S. Dist. LEXIS 15416, at *34 (D. Kan. Oct. 5, 1995) (internal citation omitted)).

Plaintiff replies that he has not requested White Line's tax returns but "rather, he seeks instead only a small sample of ten 1099s that were issued to drivers who also previously worked at C Pepper," which have already been issued to members of the proposed class.   (Doc. 114, at 5.)   The Court will, for the sake of argument, assume that the 1099s constitute "tax returns."

It is true, as White Line argues, that "tax returns are not generally discoverable, and there is a public policy against exposure of production of them." *Kear v. Kohl's Dept. Stores, Inc.*, 2013 WL 3088922, at *5 (D. Kan. June 18, 2013) (citing *Winchester v. Lester's of Minn., Inc.*, No. 88–2586, 1990 WL 126827, at *1 (D.Kan. Aug. 1, 1990) (citations omitted)).

> The Courts have developed a two-pronged test to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns.   First, the court must find that the returns are relevant to the subject matter of the action.   Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable.   The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily available.

*Id.* (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997) (citations omitted).

As discussed above, the Court has already found the documents to be relevant.   The burden thus shifts to White Line to show that the information is available from other sources.   White Line's brief in opposition does not address this point.   Further, because Plaintiff has agreed to the redaction of names and Social Security numbers of the drivers to whom the 1099s were issued, the Court sees no concern with producing the information in accordance with the Protective Order.   This objection is, thus, **overruled**.


**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 104) is **GRANTED** as set forth herein.   White Line shall respond to the subpoena, as narrowed by Plaintiff, **within thirty (30) days of the date of this Order**.

**IT IS SO ORDERED.**

Dated this 17th day of November, 2021, at Wichita, Kansas.


/s KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge